**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER M. JOHNSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )   No. 4:21-cv-01174-AGF |
| CITY OF ST. LOUIS, MISSOURI DIVISION OF CORRECTIONS, et al., | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff Christopher M. Johnson for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion, the Court finds that it should be granted. *See* 28 U.S.C. § 1915(a)(1). Additionally, for the reasons discussed below, the Court will dismiss this action without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, naming as defendants the City of St. Louis Division of Corrections, Public Safety Director Dan Isom, Unidentified Correctional Case Manager (CCM), and CCM Ido Adeowu. (Docket No. 1 at 2-4). Director Isom, the Unidentified CCM, and CCM Adeowu are sued in their official capacities only. (Docket No. 1 at 3-4, 7). The complaint contains allegations that plaintiff was

2

denied access to the courts while incarcerated at the Medium Security Institution in St. Louis, Missouri.[1]

In his "Statement of Claim," plaintiff asserts that he "was denied access to the courts directly and denied access to a law library." (Docket No. 1 at 5). This occurred while he was in custody at the Medium Security Institution from March 2021 to July 2021.

While at the Medium Security Institution, plaintiff states that he made several requests in "kite form," and additional electronic "requests and [inquiries]" through a "kite function" on a tablet. Plaintiff asserts that the replies he received "specifically stated that there is no law library, [he] can't file pro se and [he] should have [his] people get [him] a lawyer." According to plaintiff, the responses he received from the "tablet network" came from the Unidentified CCM. (Docket No. 1 at 7).

Plaintiff admits that his "[p]otential damages are mostly speculative at this point." (Docket No. 1 at 5). However, he believes that he "could have secured [his] release instead of a DOC commitment, as well as initiated other court matters that will now require [his] hiring of an attorney due to [the] statute of limitations and [his] lack of legal proficiency." Plaintiff further states his belief that defendants "are liable and should be held accountable for the infraction against [his] civil rights."

As to the City of St. Louis, plaintiff presents his belief that "budget cuts, neglect of use and maintenance neglect, as well as an application on the tablets called 'law library' combined as factors to justify the city government [abandoning] a[n] actual law library." (Docket No. 1 at 6). He asserts that the "[p]rimary responsibility falls on the City of St. Louis," as well as "its officials

---

[1] The Court notes that when this was filed, plaintiff was incarcerated at the Eastern Reception, Diagnostic, and Correctional Center. Since then, he has notified the Court that he has been paroled. (Docket No. 5).

3

and employees who prevented repeated attempts [he] made to attempt legal research and access to the courts to make filings and initiate other pending litigation."

With regard to Director Isom, plaintiff alleges that Isom neglected "his obligation to uphold the law for all people in his constituency by neglecting the rights of prisoners." (Docket No. 1 at 7). In particular, he accuses Director Isom of "failing to provide prisoners access to the court or a law library facility." Plaintiff also notes that COVID-19 has created an "increased need by closing courthouses," and that Director Isom was negligent "in his professional capacity" in failing "to provide accommodations in regard to this complaint."

Finally, concerning CCM Adeowu, plaintiff states that Adeowu is "incredibly helpful normally." However, he does not "believe" that CCM Adeowu forwarded his "grievances up the chain of command." Further, plaintiff asserts that CCM Adeowu "possibly inhibited [his] ability to exhaust fully all possible remedies per his responsibilities in his official capacity."

As a result of these incidents, plaintiff believes he is entitled to "financial recompense for [his] time, legal costs, and stress suffered from being unable to defend [himself]." (Docket No. 1 at 5). Specifically, he requests $3,200,000 in damages, and a plan "to complete the installation of a brick [and] mortar law library complete with all the resources the state affords law libraries in the Department of Corrections." Plaintiff suggests this must include law librarians, clerks, word processing or [typing] services, copies, notary, reference materials, and any other aid available." He also wants "[a] law or rule that establishes [L]exis [and] the law library app or similar concepts to be supplementary to but not a replacement for a physical law library."

## Discussion

Plaintiff brings this civil action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his right of access to the courts. Because he is proceeding in forma pauperis, the Court

4

has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this case without prejudice.

### A. City of St. Louis

Plaintiff has named the City of St. Louis as a defendant. A local governing body such as St. Louis can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). In short, there are three ways in which plaintiff can prove the liability of the City of St. Louis.

To state a claim, plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). For the reasons discussed below, plaintiff has failed to state a claim regarding an unconstitutional policy, custom, or failure to train.

### i. Policy

First, plaintiff has failed to demonstrate the existence of an unconstitutional policy or allege facts supporting the proposition that an unconstitutional policy exists. "Policy" refers to "official

policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

In this case, plaintiff has failed to present sufficient facts to support the proposition that the City of St. Louis has an unconstitutional policy as to jail law libraries. The complaint makes no specific reference to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body" as being at issue. Moreover, plaintiff presents no facts demonstrating that a City of St. Louis official made a "deliberate choice of a guiding principle or procedure" regarding law libraries in the city's jails. Rather, plaintiff vaguely alludes to his belief that budget cuts and other unspecified neglect have combined "to justify the city government abandoning a[n] actual law library." This belief on the part of plaintiff is not sufficient to establish the existence of a policy. Instead, plaintiff must provide at least some minimal facts showing "a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible" for the "subject matter in question." *See Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005). His speculation is not enough.

6

Plaintiff's chief complaint seems to be that the Medium Security Institution does not have a "brick and mortar" law library, but rather relies on a virtual law library that can be accessed via a tablet. As discussed above, plaintiff has not alleged facts attributing this to a "deliberate choice of a guiding principle or procedure" made by City of St. Louis officials, leaving the Court to speculate and make assumptions on this matter.

Even assuming that reliance on a virtual law library constitutes a City of St. Louis policy, plaintiff has not demonstrated that the policy is unconstitutional, either on its face or in its application to him. To be sure, he has stated a preference for a law library similar to those found in the Department of Corrections, with law librarians, word processing, and other services. Nevertheless, plaintiff has not established that the virtual law library is constitutionally deficient. For example, he has not alleged an inability to do legal research, to access updated statutes, or to answer any particular legal question. Plaintiff also has not alleged that he has been denied access to an attorney or prevented from seeking the advice of counsel. The Court further notes that, unlike the Department of Corrections, where inmates may be serving years' long sentences, inmates in a city jail are held for a far more limited amount of time, meaning that the requirements of a law library are necessarily different.

In short, the lack of a physical law library in and of itself is not a per se constitutional violation. *See Bear v. Fayram*, 650 F.3d 1120, 1123 (8th Cir. 2011) ("There is no one method of satisfying the constitutional requirement [of access to courts], and a prison system may experiment with prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other devices"). Additionally, beyond plaintiff's conclusions, he has not factually demonstrated that the lack of a physical library harmed him. Without more facts explaining how and why the virtual law library is deficient, and how it prejudiced him, plaintiff's

7

allegations cannot support the inference that it violates the constitution. For these reasons, plaintiff has not adequately alleged that the City of St. Louis has an unconstitutional policy.

### ii.   Custom

Second, plaintiff has failed to establish a claim of liability based on an unconstitutional "custom." To demonstrate a custom, plaintiff must show:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Here, plaintiff has not alleged facts sufficient to support the proposition that an unconstitutional custom exists. Plaintiff has not established the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" City of St. Louis employees, much less that officials were deliberately indifferent to or tacitly authorized such misconduct. Instead of attempting to show a "persistent pattern of unconstitutional misconduct," plaintiff's facts – such as they are – focus mainly on his own experiences. There are no facts, for instance, alleging that other inmates at the Medium Security Institution or other City of St. Louis jails have been unable to access the courts. For these reasons, plaintiff has not established the existence of an unconstitutional custom.

### iii.     Failure to Train

Finally, plaintiff has not adequately asserted that the City of St. Louis has failed to train or supervise its employees. This type of municipal liability claim can be established by a showing of deliberate indifference. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Here, plaintiff has not shown that City of St. Louis officials "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Such notice is generally shown by demonstrating a "pattern of similar constitutional violations by untrained employees." As previously discussed, plaintiff's facts do not support the existence of any such pattern. Therefore, plaintiff has not adequately alleged a failure to train.

### iv.     Respondeat Superior

Plaintiff appears to assert a claim on the theory that the City of St. Louis is liable for the actions of its employees. For instance, he notes that, when he made electronic inquiries about filing a lawsuit, he was "specifically" told "that there is no library," that he could not "file pro se," and that he should have his "people get [him] a lawyer." He also alleges that unidentified City of St. Louis "officials and employees…prevented repeated attempts [he] made to attempt legal research and access to the courts to make filings and initiate other pending litigation."

9

To the extent that plaintiff is seeking to impose liability on the City of St. Louis due to the actions of its employees, the claim fails. That is because a municipality cannot be held liable merely because it employs a tortfeasor. *A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a *respondeat superior* theory"). Therefore, for this reason as well, plaintiff has failed to state a claim.

v. **Failure to State a Municipal Liability Claim**

For all the reasons discussed above, plaintiff has failed to state a claim against the City of St. Louis. Therefore, the claim must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

B. **Director Isom**

Plaintiff has sued Director Isom in an official capacity only. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly*, 813 F.3d at 1075 (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

10

Here, Director Isom is alleged to be employed by the City of St. Louis. As such, the official capacity claim against him is actually a claim against the city itself, his employer. To prevail, plaintiff must establish the City of St. Louis's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. However, as discussed at length above, he has not adequately stated a claim against the City of St. Louis for having an unconstitutional policy or custom, or for being deliberately indifferent in failing to train or supervise. Thus, the official capacity claim against Director Isom must be dismissed.

Even if Director Isom had been sued in an individual capacity, the claim would still be subject to dismissal. Individual liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

In this case, plaintiff broadly alleges that Director Isom neglected "his obligation to uphold the law" and that he neglected "the rights of prisoners by denying them or failing to provide prisoners access to the court or a law library facility." These vague statements do not actually provide any indication of Director Isom's actual role with regard to jail law libraries. Instead of

11

providing facts, plaintiff relies on conclusions, thereby neglecting to demonstrate that Director Isom took an action – or failed to take an action – that resulted in the deprivation of plaintiff's rights. That is, plaintiff has not made any connection between Director Isom and plaintiff's purported inability to access the courts.

Rather than attempt to forge a causal link, plaintiff appears to assert liability against Director Isom based on his position of authority. To state a claim against Director Isom, however, plaintiff must show that Isom violated the constitution through his own actions. *See Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution"). Simply being in charge of the jail is not enough. *See Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011) (stating that it is settled "that a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement"); and *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) ("[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). For these reasons, even if Director Isom had been sued in an individual capacity, plaintiff has failed to state a claim.

### C.  Unidentified CCM

As with Director Isom, plaintiff has sued the Unidentified CCM in an official capacity only. Because the Unidentified CCM is alleged to be employed by the City of St. Louis, the official capacity claim against him is treated as being made against the city itself, the employer. As discussed above, plaintiff has failed to state a municipal liability claim against the City of St. Louis. Therefore, the official capacity claim against the Unidentified CCM must be dismissed as well.

Even if plaintiff had sued the Unidentified CCM in an individual capacity, plaintiff has not demonstrated a causal link between the Unidentified CCM's actions and a violation of plaintiff's constitutional rights. *See Mayorga*, 442 F.3d at 1132. By way of explanation, the Court notes that plaintiff accuses the Unidentified CCM of replying to his electronic queries on the "tablet network." These replies apparently consisted of three statements that plaintiff found objectionable. The first statement, "that there is no law library," appears to be a mere assertion of reality, to wit: that there was no physical, "brick and mortar" law library at the Medium Security Institution. Simply stating this did not violate plaintiff's constitutional rights. Likewise, the Unidentified CCM's advice that plaintiff "should have [his] people get [him] a lawyer" does not demonstrate a constitutional violation. Finally, plaintiff asserts that the Unidentified CCM told him that he could not "file pro se." While this is obviously inaccurate, plaintiff does not present any facts showing that he relied on this statement to his detriment, or that the Unidentified CCM took any steps to actually prevent him from filing documents pro se. For these reasons, even if plaintiff had sued the Unidentified CCM in an individual capacity, he has failed to state a claim.

**D. CCM Adeowu**

As with Director Isom and the Unidentified CCM, CCM Adeowu is sued in an official capacity only. Because he is alleged to be employed by the City of St. Louis, the official capacity claim against him is treated as being made against the city itself, his employer. To prove the City of St. Louis's liability, plaintiff must allege that he was injured due to a city policy, custom, or failure to train. However, as explained above, plaintiff's facts do not adequately state a municipal liability claim. Therefore, the official capacity claim against CCM Adeowu must be dismissed.

Even if CCM Adeowu is assumed to be sued in an individual capacity, plaintiff has not established that Adeowu violated his constitutional rights. To the contrary, plaintiff acknowledges

13

that CCM Adeowu is normally "incredibly helpful." The only allegation against him is a belief on plaintiff's part that CCM Adeowu did not forward the "grievances up the chain of command," which "possibly inhibited [his] ability to exhaust fully all possible remedies."

To begin, plaintiff's ambiguously presented belief about what CCM Adeowu might not have done, or the possibility that it somehow inhibited him from exhausting his remedies, does not provide sufficient factual support for a conclusion that Adeowu violated his constitutional rights. More fundamentally, a grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights"). Because a grievance procedure does not provide plaintiff with a substantive right, any failure by CCM Adeowu to forward his grievance does not amount to a constitutional violation. For these reasons, even if plaintiff had sued CCM Adeowu in an individual capacity, he has failed to state a claim.

**E. Access to Courts Claim**

Beyond plaintiff's failure to state a claim against the individually identified defendants, the Court has determined that plaintiff's allegations do not support an access to courts claim. The United States Supreme Court has stated that it is "established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right requires that prisons provide "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The

right of meaningful access to the courts and to the judicial process extends to pretrial detainees.[2] *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1052 (8th Cir. 1989).

Typically, access to courts claims result from deficiencies in a prison's legal assistance program or law library that hinders an inmate's ability to bring a claim. *Williams v. Hobbs*, 658 F.3d 842, 852 (8th Cir. 2011). However, "the due process clause is not meant to enable the prisoner to discover grievances, and to litigate effectively once in court." *Id*. "To prove a violation of the right of meaningful access to the courts, a prisoner must establish [that] the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008). In order to prove actual injury, the plaintiff must demonstrate that a nonfrivolous legal claim has been frustrated or is being impeded. *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007). For example, an inmate must show that a complaint that he prepared was dismissed due to a technical requirement that a law library's inadequacies prevented him from knowing, or that a library was so inadequate that it prevented him from filing a complaint for actionable harm at all. *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996).

Here, plaintiff has failed to properly allege an access to courts claim for two reasons. First, he has not demonstrated that the Medium Security Institution's virtual law library, accessed via a tablet, was constitutionally deficient. Plaintiff has not, for example, alleged that he was unable to do legal research on the virtual library, that he was unable to access updated statutes or codes, or

---

[2] Plaintiff indicates that he is a convicted and sentenced state prisoner and that, at the time he filed his lawsuit, he was an inmate at the Eastern Reception, Diagnostic and Correctional Center in Bonne Terre, Missouri. It is unclear, however, what his inmate status was when the events in the complaint occurred. Given that he was being held in a city jail, it is likely that he was actually a pretrial detainee. Regardless of his status, plaintiff has a right of access to the courts.

15

that there was a particular question he could not answer. Furthermore, plaintiff has not claimed that he was not allowed to have contact with his attorney, either by phone or in person at the facility, or that he was kept from attempting to contact an attorney to handle any case. While plaintiff has clearly expressed a preference for a "brick and mortar" law library like those in the Department of Corrections, he has not shown that the Medium Security Institution's virtual law library violated his rights, especially considering that a jail – unlike a prison – is not meant to hold inmates long-term.

To the extent that plaintiff believes a "brick and mortar" law library is constitutionally required, the Court notes that there is no single method for complying with the constitutional requirement that inmates have access to the courts. *See Bear*, 650 F.3d at 1123 ("There is no one method of satisfying the constitutional requirement, and a prison system may experiment with prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other devices"). Rather, a system does not run afoul of the constitution as long as there is no actual harm to an inmate's access rights. *See Bear v. Kautzky*, 305 F.3d 802, 806 (8th Cir. 2002).

Second, plaintiff has not demonstrated that he was harmed by the lack of a physical law library at the Medium Security Institution. *See Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (stating that in order for an inmate to assert a successful claim of denial of meaningful access to the courts, he must demonstrate that he has suffered prejudice). As noted above, the Due Process Clause is not meant to enable plaintiff to discover claims or litigate effectively once in court. Rather, to show that his right of access to the courts was violated, he must demonstrate that he was not provided an opportunity to litigate a particular claim, and that this claim was nonfrivolous and arguably meritorious. Plaintiff's broad and conclusory allegations fall short of these standards.

In his "Statement of Claim," plaintiff contends that he "believe[s] [he] could have secured [his] release instead of a DOC commitment, as well as initiated other court matters that will now require [his] hiring of an attorney due to [the] statute of limitations and [his] lack of legal [proficiency]." He also refers to being prevented from making "repeated attempts" to do "legal research and access the courts to make filings and initiate other pending litigation."

These allegations lack sufficient elaboration. Plaintiff provides no indication as to how a different or better law library could have secured his release, making the claim sheer speculation. He fails to disclose any specifics about the other "court matters" he wanted to initiate, much less that such matters were nonfrivolous and arguably meritorious. Regarding plaintiff's "repeated attempts" to do "legal research and access the courts," plaintiff provides no specific facts as to the nature of the alleged obstacles he encountered, how he was prevented from doing certain things, what research he was trying to conduct, what filings he could not make, or what other litigation he wanted to pursue. Nothing in the complaint describes a viable legal claim that plaintiff could not bring, or suggests that something he filed was dismissed due to a technical requirement he was prevented from knowing, or shows that he was prevented from filing a complaint for actionable harm in the first place. While mentioning the statute of limitations, plaintiff does not assert that his approximately four months in the Medium Security Institution caused him to miss any filing deadlines for any particular case.

Instead of facts, plaintiff is essentially repeating the elements of a cause of action, claiming that he has been denied access to the courts without any substantive allegations to support the premises. This is not sufficient to state a plausible claim for relief. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the

17

speculative level"); and *Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement").

For all these reasons, plaintiff has failed to state an access to courts claim. Therefore, the claim must be dismissed.

### F. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 4). The motion will be denied as moot as this case is being dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 4) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

                                                                */s/ Audrey G. Fleissig*
                                               AUDREY G. FLEISSIG
                                               UNITED STATES DISTRICT JUDGE

Dated this 21st day of January 2022.